[Cite as *Graham v. Shamrock Stables*, 2014-Ohio-3977.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| | | |
|---|---|---|
| LETHEA GRAHAM | | C.A. No.    14CA010529 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| SHAMROCK STABLES, et al. | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellees | | CASE No.    12CV178767 |

DECISION AND JOURNAL ENTRY

Dated: September 15, 2014

---

WHITMORE, Judge.

{¶1}   Plaintiff-Appellant, Lethea Graham, appeals from the judgment of the Lorain County Court of Common Pleas, granting summary judgment in favor of Defendant-Appellees, Shamrock Stables and Richard Mahoney (collectively, "Shamrock Stables"). This Court affirms.

I

{¶2}   In late October 2011, Graham went to Shamrock Stables to evaluate a miniature horse for possible adoption. Graham looked over the horse and began walking it back to its stall. Shortly after Graham entered the barn with the horse, she heard a dog barking. According to Graham, a large, brown dog then began jumping at the horse's back legs while continuing to bark. The horse "spooked," swung around, and knocked Graham to the ground. Graham suffered serious injuries to two of her fingers as a result of her fall.

{¶3} Subsequently, Graham and her husband[1] brought both common law and statutory causes of action against Shamrock Stables for the injuries Graham sustained as a proximate result of the dog Shamrock Stables harbored on its property. Shamrock Stables answered the complaint and later filed a motion for summary judgment. Shamrock Stables asserted that it was immune from suit under the equine immunity statute, as Graham's injury was the result of an inherent risk of equine activity. Graham filed a brief in opposition, and Shamrock Stables filed a reply brief. The court granted the motion for summary judgment, concluding that Shamrock Stables was statutorily immune from suit.

{¶4} Graham now appeals from the trial court's judgment and raises one assignment of error for our review.

II

Assignment of Error

THE TRIAL COURT ERRED BY FINDING THAT R.C. §955.28 IS PREMPTED (sic) BY R.C. §2305.321 WHERE R.C. §955.28 IMPOSES STRICT LIABILITY ON AN OWNER OF A DOG FOR ALL DAMAGES PROXIMATELY CAUSED BY THE DOG[.]

{¶5} In her sole assignment of error, Graham argues that the trial court erred by granting Shamrock Stables' motion for summary judgment. Specifically, she argues that R.C. 2305.321 (the equine immunity statute) does not apply here. Graham contends that, because her injuries were the proximate result of Shamrock Stables' dog, they are compensable under R.C. 955.28. We do not agree.

{¶6} Initially, we note that, while Graham brought both common law and statutory causes of action against Shamrock Stables, her argument on appeal is limited to her statutory

---

[1] Graham's husband is not a party on appeal.

cause of action. As such, this Court only addresses Graham's statutory cause of action in its analysis.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶8} R.C. 955.28 provides a statutory cause of action for injuries sustained as a result of another person's dog. "To prove a statutory cause of action pursuant to R.C. 955.28, the plaintiff must prove '(1) ownership or keepership [or harborship] of the dog, (2) that the dog's actions were the proximate cause of the injury, and (3) the damages.'" (Alteration sic.) *Uhl v. McKoski*, 9th Dist. Summit No. 27066, 2014-Ohio-479, ¶ 11, quoting *Beckett v. Warren*, 124

Ohio St.3d 256, 2010-Ohio-4, ¶ 11. R.C. 955.28 is a strict liability statute with only a few enumerated defenses. *Durasin v. Jakmas Plumbing & Heating, Inc.*, 9th Dist. Lorain No. 04CA008559, 2005-Ohio-867, ¶ 10. None of those defenses are applicable here.

{¶9} "Ohio's equine-activities-immunity statute, R.C. 2305.321, provides immunity from liability for harm sustained by an equine-activity participant allegedly resulting from the inherent risk of equine activities." *Smith v. Landfair*, 135 Ohio St.3d 89, 2012-Ohio-5692, ¶ 1. *Accord* R.C. 2305.321(B)(1). The phrase "equine activity participant" is broad enough that it encompasses a person "controlling in any manner an equine, whether the equine is mounted or unmounted." R.C. 2305.321(A)(3)(a). Likewise, "almost every activity associated with a horse is an 'equine activity.'" *Smith* at ¶ 16. The phrase includes "[t]he riding, inspecting, or evaluating of an equine owned by another person, regardless of whether the owner has received anything of value for the use of the equine * * *." R.C. 2305.321(A)(2)(a)(v). It also includes "[a] ride, trip, * * * or other activity that involves an equine and that is sponsored by an equine activity sponsor, regardless of whether the activity is formal, informal, planned, or impromptu." R.C. 2305.321(A)(2)(a)(vi). An "equine activity sponsor" includes "[a]n operator * * * of * * * an equine facility, such as a stable, clubhouse, pony ride, fair, training facility, show ground, or arena at which an equine activity is held." R.C. 2305.321(A)(4)(b).

{¶10} As employed by the equine immunity statute, an

"Inherent risk of an equine activity" means a danger or condition that is an integral part of an equine activity, including, but not limited to, any of the following:

(a) The propensity of an equine to behave in ways that may result in injury * * * to persons on or around the equine;

(b) The unpredictability of an equine's reaction to * * * other animals * * *.

R.C. 2305.321(A)(7)(a)-(b). The statute recognizes that "horses are unpredictable" and "is broadly written to address the inherent risks that arise when horses are near people." *Smith* at ¶ 28, 29. The immunity bestowed upon an equine activity sponsor or other person by the statute is forfeited only under certain enumerated circumstances. *See* R.C. 2305.321(B)(2).

{¶11} In her deposition, Graham testified that she went to Shamrock Stables to evaluate a miniature horse named Barney for possible adoption. When she arrived at Shamrock Stables, Graham observed a large, brown dog walking around the property. Graham waited outside the barn while another individual brought Barney out to her. Graham then petted Barney and examined him for several minutes before she decided to walk him back to his stall. Graham walked on Barney's left-hand side while holding his lead line. Graham testified that, as she entered the barn with Barney, she heard a dog barking. The same dog she had seen when she arrived then ran behind Barney and began barking and jumping at Barney's back legs. Graham testified that Barney "spooked" as a result of the dog, swung around, and knocked her to the ground.

{¶12} Graham acknowledged in her deposition that she owns eight horses of her own and has a lot of experience with horses. She agreed that horses can be unpredictable in how they react to sounds, sudden movements, people, and other animals. When asked what it means for a horse to spook, Graham testified that horses "have a flight or fight activity where they take off running to get away from whatever's bothering them."

{¶13} In her deposition, Renee Grabski testified that she was a friend of Graham's as well as a volunteer for a non-profit horse rescue organization that boarded its horses at Shamrock Stables. Grabski knew that Graham was interested in buying a miniature horse, so she told Graham that Barney was available for adoption. She arranged a time for Graham to see Barney

and met Graham at Shamrock Stables on the day in question. Grabski testified that Barney was "frisky that day because it was colder weather and the wind was blowing." She specified that Barney was moving around instead of just standing still. According to Grabski, Barney was a "pretty well behaved" horse, but could "be feisty."

{¶14} Grabski testified that she did not see Graham get knocked down by Barney because she was walking ahead of them. As she was walking, she heard hoofbeats coming from behind her, turned around, and saw Barney running towards her. She stepped out of the way and saw Graham lying on the ground. After making sure that Graham was receiving help, Grabski collected Barney and put him back in his stall.

{¶15} Grabski testified that she did not see a dog around when she looked back and saw Graham lying on the ground. She acknowledged that Wendy Montoney, the daughter of Shamrock Stables' owner, kept two dogs there and that her dogs were generally free to roam. She also testified, however, that Montoney had put the dogs away before Graham brought Barney into the barn.

{¶16} In her deposition, Montoney testified that she owned two dogs, a German Shepherd and a Mastiff mix. She agreed that both dogs were typically on the premises with her and that she never used leashes on them. She stated, however, that both dogs were used to the horses and neither dog was prone to jumping. Additionally, she stated that she always put both dogs in the office as a courtesy when visitors came to the barn. Montoney testified that the office was located at the front of the barn and was equipped with a solid wooden door. According to Montoney, she secured both dogs in the office before Graham's injury occurred.

{¶17} In its motion for summary judgment, Shamrock Stables argued that it was immune from suit under the equine immunity statute. Shamrock Stables noted that the risk that a

horse might spook is an inherent risk of equine activity and, at the time of her injury, Graham was an equine activity participant. It argued that, even assuming one of Montoney's dogs caused Barney to spook, the equine immunity statute would still apply because an equine's reaction to another animal is an inherent risk of equine activity.

{¶18} In her brief in opposition, Graham conceded that Shamrock Stables would be immune from suit if she were bringing suit against it in its capacity as a sponsor of an equine activity. Graham argued, however, that her suit arose from the injuries she received as a proximate result of Montoney's dog, not the horse that reacted to the dog. Therefore, Graham argued that R.C. 955.28 controlled and Shamrock Stables was strictly liable for the injuries the dog caused her.

{¶19} There is no dispute that, if R.C. 2305.321 (the equine immunity statute) controls here, Shamrock Stables is immune from suit. The question is which statute applies: R.C. 2305.321 or R.C. 955.28. To answer the question, we need look no further than the plain language of the equine immunity statute. *See Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, ¶ 14 ("[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom.").

{¶20} As set forth above, one of the inherent risks of equine activity is the "unpredictability of an equine's reaction *to * * * other animals*." (Emphasis added.) R.C. 2305.321(A)(7)(b). The General Assembly did not exempt dogs from the foregoing provision. Barney's reaction to Montoney's dog, therefore, would qualify as an inherent risk of equine activity. *See id.* Likewise, if Barney spooked for some other reason, his behavior would qualify as an inherent risk of equine activity. *See* R.C. 2305.321(A)(7)(a) ("propensity of an equine to

behave in ways that may result in injury * * * to persons * * * around the equine" listed as inherent risk of equine activity). As an entity/person covered by the equine immunity statute, Shamrock Stables was not liable "in damages in a tort or other civil action" for the injuries Graham received. R.C. 2305.321(B)(1). Although the General Assembly could have chosen to exempt certain statutory causes of action from the foregoing provision, it did not do so. We must hold, therefore, that a statutory cause of action brought under R.C. 955.28 is a "tort or other civil action" within the meaning of the equine immunity statute. *See id. See also Hubbard* at ¶ 14. Shamrock Stables was entitled to immunity.

{¶21} Notably, the equine immunity statute enumerates several exceptions under which immunity is forfeited. *See* R.C. 2305.321(B)(2). One of those exceptions is "[a]n act or omission of an equine activity sponsor, * * * equine professional, * * * or other person [that] constitutes a willful or wanton disregard for the safety of an equine activity participant and proximately causes the harm involved." *Id.* Arguably, an equine activity sponsor or professional's failure to secure unruly dogs on a premises where horses are located could constitute such an act or omission. We need not address that issue, however, as Graham never argued that any of the exceptions to the equine immunity statute apply here.

{¶22} Having reviewed the record, we must conclude that the trial court did not err by granting Shamrock Stables' motion for summary judgment. Graham's sole assignment of error is overruled.

III

{¶23} Graham's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶24} I respectfully dissent.

{¶25} The majority premises its conclusion on the supposition that the equine immunity statute, R.C. 2305.321, controls over canine liability statute, R.C. 955.28, by its plain language. I disagree. The legislature has not enunciated an hierarchical structure relative to these two

statutes which are in conflict. In that event, it is necessary to consider the rules of statutory construction to determine which provision controls.

{¶26} R.C. 2305.321 is a general immunity statute that exempts certain categories of persons from liability for harm resulting "from an inherent risk of an equine activity." R.C. 2305.321(B)(1). The parties do not dispute that Ms. Graham was engaged in an equine activity when she sustained her injuries. The majority concludes that the equine immunity statute controls because "inherent risk" is defined very broadly and includes "[t]he unpredictability of an equine's reaction to * * * other animals." R.C. 2305.321(A)(7)(b). R.C. 955.28(B), on the other hand, is a special provision that imposes strict liability on owners and keepers of dogs, where the dog causes any injury to a person or property, except in very limited situations where the injured person was committing certain types of crimes on the owner's/keeper's property or was teasing, tormenting, or abusing the dog. Both of these statutes cover the same subject matter, specifically the imposition of liability for injuries caused as a result of the actions of a dog.

{¶27} As this Court has recognized:

It is a well-settled principle of statutory construction that when two statutes, one general and the other special, cover the same subject matter, the special provision is to be construed as an exception to the general statute which might otherwise apply. That principle is codified in R.C. 1.51, which provides that if a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and manifest intent is that the general provision prevails.

(Internal citations and quotations omitted.) *Riffle v. Physicians and Surgeons Ambulance Serv.*, 9th Dist. Summit No. 25829, 2011-Ohio-6595, ¶ 10.

**{¶28}** In this case, the general immunity provision in R.C. 2305.321 must yield to the exception created in the special provision R.C. 955.28 for injuries occasioned by dogs. *See Gibson v. Donahue*, 148 Ohio App.3d 139, 2002-Ohio-194, ¶ 35-37 (1st Dist.) (Hildebrandt, J., concurring). Certainly, there would be no issue in this case if a neighbor's dog had run onto the property and startled the horse, injuring Ms. Graham. The neighbor would not be shielded from liability. It is hard to fathom why the keeper of both the horse and dog should escape strict liability arising out of the act of the dog, merely because the dog caused injuries via the instrument of the horse. As applied to the facts of this case, R.C. 2305.321 and R.C. 955.28 are irreconcilable. Therefore, the special provision imposing strict liability for injuries caused by a dog controls over the general immunity accorded in R.C. 2305.321 for injuries caused as a result of the inherent risk associated with equine activities. Accordingly, I would sustain Ms. Graham's assignment of error and reverse the trial court's judgment.

APPEARANCES:

KIMBERLY C. YOUNG and KEVIN L. LENSON, Attorneys at Law, for Appellant.

ALAN B. GLASSMAN, Attorney at Law, for Appellees.