[Cite as *Licking Cty. Dog Warden v. Sendykar*, 2019-Ohio-5187.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| LICKING COUNTY DOG WARDEN | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 2019 CA 00021 |
| | : | |
| JAMES SENDYKAR | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Licking County Municipal Court, Case No. 19 CVH 00495

JUDGMENT:                      AFFIRMED

DATE OF JUDGMENT ENTRY:      December 10, 2019

APPEARANCES:

For Plaintiff-Appellee:

WILLIAM C. HAYES
LICKING COUNTY PROSECUTOR

CAROLYN J. CARNES
20 S. Second St., 4th Floor
Newark, OH 43055

For Defendant-Appellant:

CHRIS BRIGDON
123 Stirling Way
Etna, OH 43062

*Delaney, J.*

{¶1}   Defendant-Appellant James Sendykar appeals the April 1, 2019 judgment entry of the Licking County Municipal Court. Plaintiff-Appellee is the Licking County Dog Warden.

## FACTS AND PROCEDURAL HISTORY

{¶2}   On February 10, 2019, Defendant-Appellant James Sendykar was issued a Notice of Dog Designation Status by Plaintiff-Appellee Licking County Dog Warden, which designated Sendykar's dog as dangerous. Sendykar appealed the designation to the Licking County Municipal Court and a bench trial was held on April 1, 2019. The following evidence was adduced at the bench trial.

{¶3}   On February 6, 2019, Joseph Carson, while employed by FedEx, delivered a package to a residence in Hebron, Ohio. The package was addressed to Carrie Sendykar, wife of Defendant-Appellant James Sendykar. This was the first time Carson had delivered a package to this residence. To deliver the package to the residence, Carson backed the FedEx truck half-way up the driveway, using his rear-view camera to guide him, instead of his side mirrors. On the property near the driveway, Sendykar had posted a sign that read, "DOG ON PREMISES CAUTION INVISIBLE DOG FENCE UPS/FEDEX DROP OFF →." The arrow on the sign pointed to the ground. The photograph of the sign was admitted as evidence. Carson testified he did not see the sign as he backed into the driveway.

{¶4}   Carson parked the truck in the driveway, picked up the package to be delivered, and opened the back door of the truck. When he opened the back door of the truck, Carson saw a dog on the property of the residence. The dog, named Garth,

belonged to Sendykar. Carson exited the truck, took six steps, and looked down at the package in his hand to scan the package. As he was scanning the package, Garth bit Carson on the front of his left thigh. Simultaneously, the package scanner showed "dog bite" because a dog had previously injured another FedEx employee at that address.

{¶5}   After Garth bit Carson, Carson called his manager who instructed Carson to go to an urgent care facility. Carson put the package back on the truck. Carson's leg wound was treated at the urgent care facility. It did not require stitches. Carson, who had experience with dogs, testified the wound was a dog bite, not a dog scratch. A photograph of Carson's wound at the time of the incident was introduced as evidence. It showed two wounds, close together. The skin was broken and bloodied.

{¶6}   Carson contacted the Licking County Dog Warden to report the incident and Licking County Deputy Dog Warden Tyler Moore made contact with Carson at the urgent care facility. Deputy Moore took Carson's information and then drove to the residence to speak with Sendykar. Deputy Moore had previous knowledge of Garth stemming from an alleged dog bite that occurred to a FedEx driver on October 3, 2018. When Deputy Moore arrived at the residence, he observed Garth come out of the garage from a partially open garage door. The residence's property had an invisible fence. Deputy Moore stayed in his truck because Garth was barking and growling. Deputy Moore called Sendykar, who said he was out of town and his wife, Carrie Sendykar was not at home. Sendykar's son was at home and Sendykar contacted his son to tell him to come out and secure Garth. Deputy Moore told Sendykar's son about the incident and issued a quarantine notice.

{¶7}   At trial, Sendykar testified that Garth was a not a dangerous dog. He had never observed Garth being aggressive and he was gentle around children. He argued

the wound suffered by Carson was a scratch from Garth's claws, not a bite. Sendykar contended the incident would not have happened if Carson had obeyed the sign Sendykar posted cautioning delivery persons about the presence of a dog on the property and where to drop off packages. Sendykar testified the sign was clearly visible to a vehicle in the residence's driveway. Sendykar argued they were not expecting a package to be delivered at the time of the incident.

{¶8}   At the conclusion of the bench trial, the trial court found the Licking County Dog Warden met its burden to demonstrate Garth was a dangerous dog as defined by R.C. 955.11. It stated the direct and uncontroverted evidence showed Garth bit Carson and did so without provocation. The trial court memorialized its verdict by judgment entry filed on April 1, 2019.

{¶9}   It is from this judgment entry that Sendykar now appeals.

## ASSIGNMENT OF ERROR

{¶10} Sendykar raises one Assignment of Error:

{¶11} "THE DESIGNATION OF APPELLANT'S DOG AS A 'DANGEROUS DOG' PER OHIO REVISED CODE §955.11(1) WAS IN ERROR. THE STATE'S RELIANCE UPON TESTIMONY AND THE STATE'S EXHIBITS 4 AND 5 COULD NOT HAVE CONVINCED A REASONABLE MIND OF GUILT BY CLEAR AND CONVINCING EVIDENCE; AND AFTER DRAWING REASONABLE INFERENCES, THE FINDING AS A DANGEROUS DOG WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE."

## ANALYSIS

{¶12} In his sole Assignment of Error, Sendykar contends the designation of Garth as a dangerous dog was against the manifest weight of the evidence. We disagree.

**Definition of a Dangerous Dog**

{¶13} R.C. 955.11(A) defines a "dangerous dog" as,

(1)(a) "Dangerous dog" means a dog that, without provocation, and subject

to division (A)(1)(b) of this section, has done any of the following:

(i) Caused injury, other than killing or serious injury, to any person;

(ii) Killed another dog;

(iii) Been the subject of a third or subsequent violation of division (C) of

section 955.22 of the Revised Code.

R.C. 955.11(A)(1)(b) states a dangerous dog "* * * does not include a police dog that has

caused injury, other than killing or serious injury, to any person or has killed another dog

while the police dog is being used to assist one or more law enforcement officers in the

performance of their official duties."

{¶14} An owner of a "dangerous dog" must comply with certain requirements

found in R.C. 955.11, R.C. 955.22, and R.C. 955.54, which set forth, inter alia, procedures

relating to confining, tethering, registering, and neutering the dog, transferring ownership

of the dog, and obtaining liability insurance. *Spurrier v. Lake Cty. Dog Warden*, 11th Dist.

Lake No. 2018-L-026, 2018-Ohio-4663, 2018 WL 6041069, ¶ 3. A dog owner who

disagrees with the designation of their dog as "dangerous" may request a hearing with

the municipal or county court that has territorial jurisdiction over the owner. *Id.* citing R.C.

955.222(C). At the hearing, the person who designated the dog a "dangerous dog" has

the burden of proving, by clear and convincing evidence, that the dog is "dangerous." *Id.*

{¶15} The bulk of Sendykar's appellate brief argues the evidence shows that

Carson was a trespasser to Sendykar's property when Garth injured Carson. Sendykar

posted a sign on his property warning of the dog's presence and the location where packages were to be dropped off. Carson parked his truck in Sendykar's driveway and walked on Sendykar's property beyond the location marked in the sign. Sendykar contends that because Carson was a trespasser, Garth cannot be designated as a dangerous dog. Under R.C. 955.11(A)(6)(a), a "vicious dog" is defined as "a dog, that without provocation and subject to division (A)(6)(b) of this section, has killed or caused serious injury to any person." A "vicious dog" does not include "[a] dog that has killed or caused serious injury to any person while that person was committing or attempting to commit a trespass or other criminal offense on the property of the owner, keeper, or harborer of the dog." R.C. 955.11(A)(6)(b)(ii). In this case, the Licking County Dog Warden designated Garth as a "dangerous dog," not a "vicious dog," as defined by R.C. 955.11(A); therefore, whether Carson was a trespasser to the property when he was injured by Garth was not relevant to trial court's determination of whether the Licking County Dog Warden established Garth was a "dangerous dog."

{¶16} Sendykar further relies upon R.C. 955.28(B) to argue he is not liable to Carson because Carson was a trespasser. R.C. 955.28(B) states,

> The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit criminal trespass or another criminal offense other than a minor misdemeanor on the property of the owner, keeper, or harborer, or was committing or attempting to commit a criminal offense other than a minor misdemeanor against any

person, or was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property. Additionally, the owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog if the injury, death, or loss was caused to the person or property of an individual who, at the time of the injury, death, or loss, was on the property of the owner, keeper, or harborer solely for the purpose of engaging in door-to-door sales or other solicitations regardless of whether the individual was in compliance with any requirement to obtain a permit or license to engage in door-to-door sales or other solicitations established by the political subdivision in which the property of the owner, keeper, or harborer is located, provided that the person was not committing a criminal offense other than a minor misdemeanor or was not teasing, tormenting, or abusing the dog.

R.C. 955.28 provides a statutory cause of action for injuries sustained as a result of another person's dog. *Graham v. Shamrock Stables*, 2014-Ohio-3977, 19 N.E.3d 578, ¶ 8 (9th Dist.). The statute has no application in this matter for the designation of a dangerous dog by the Licking County Dog Warden.

**Standard of Review**

{¶17} This Court has previously held that because R.C. 955.11(A)(1)(a) essentially calls for a de novo hearing by a municipal court or county court upon request by a dog owner, the appellate court's standard of review on a manifest weight challenge in the present context is the same as in a civil case. *Spangler v. Stark Cty. Dog Warden*, 2013-Ohio-4774, 999 N.E.2d 1247, ¶ 18 (5th Dist.). In *Eastley v. Volkman*, 132 Ohio St.3d

328, 2012-Ohio-2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), is also applicable in civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. A reviewing court is to examine the entire record and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.*; *see also Sheet Metal Workers Local Union No. 33 v. Sutton*, 5th Dist. Stark No. 2011 CA 00262, 2012-Ohio-3549. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶18} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. *Markel v. Wright*, 5th Dist. Coshocton No. 2013CA0004, 2013-Ohio-5274. Further, "an appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusion of law." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Id.* Accordingly,

a trial court may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998).

{¶19} The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *Spangler v. Stark Cty. Dog Warden*, 2013-Ohio-4774, 999 N.E.2d 1247, ¶ 17 (5th Dist.) citing *In re Estate of Haynes*, 25 Ohio St.3d 101, 103–104, 495 N.E.2d 23 (1986).

**Determination of a Dangerous Dog**

{¶20} In this case, we do not find the trial court lost its way or created a manifest miscarriage of justice in affirming the designation by the Licking County Dog Warden that Garth was a dangerous dog. R.C. 955.11(A)(1)(a)(i) states that a dangerous dog is a dog that causes an injury to any person without provocation. R.C. 955.11(A)(7) defines "without provocation" as a dog that "was not teased, tormented, or abused by a person, or that the dog was not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity." There is no dispute of fact that on February 6, 2019, Garth injured Carson. Carson testified Garth bit him on the left thigh. The photograph presented at trial showed two wounds on Carson's thigh; the skin was broken and bloodied. The next element is whether Garth was provoked when he injured Carson. There was no evidence presented at the bench trial that Garth was teased, tormented, or abused at the time Garth injured Carson, nor was there evidence presented that Garth was coming to the aid or defense

of Sendykar or a member of his family at the time Garth injured Carson. The evidence showed that no one was home when Carson delivered the package to the residence.

{¶21} Garth's designation as a dangerous dog under R.C. 955.11(A)(1)(a)(i) was not against the manifest weight of the evidence.

{¶22} Sendykar's sole Assignment of Error is overruled.

## CONCLUSION

{¶23} The judgment of the Licking County Municipal Court is affirmed.

By: Delaney, J.,

Baldwin, P.J. and

Wise, Earle, J., concur.