[Cite as *Tate v. Butler Cty. Dog Warden*, 2024-Ohio-4732.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| BRAD TATE, | : | |
| Appellant, | : | CASE NO. CA2024-03-042 |
| | : | O P I N I O N |
| - vs - | | 9/30/2024 |
| | : | |
| BUTLER COUNTY DOG WARDEN, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY AREA II COURT
Case No. CVH2100930

Herdman Law, and Joseph A. Cesta, and Schiavone Law Firm, and Frank J. Schiavone IV, for appellant.

Michael T. Gmoser, Butler County Prosecuting Attorney, and Kevin Gerrity, Assistant Prosecuting Attorney, for appellee.

**PIPER, J.**

{¶ 1} Appellant, Brad Tate, appeals the decision of the Butler County Area II Court upholding the decision of appellee, the Butler County Dog Warden, designating Tate's dog, Kaia, a "dangerous dog" under R.C. 955.11(A)(1)(a)(ii). For the reasons outlined below, we reverse the trial court's decision.

**Facts and Procedural History**

{¶ 2}   On December 3, 2021, Tate's dog, Kaia, was alleged to have bitten his neighbor's dog, Dorie.  The bite punctured Dorie's lung and ultimately resulted in Dorie's death via suffocation.  At the time of this incident, Kaia was an approximately six-year-old, 60-pound boxer/terrier mix, whereas Dorie was a seven-year-old, six-to-seven-pound purebred chihuahua.  Following this incident, the dog warden notified Tate that Kaia was being designated as a "dangerous dog" under R.C. 955.11(A)(1)(a)(ii).

{¶ 3}   Pursuant to R.C. 955.11(A)(1)(a)(ii), a "dangerous dog" is defined as a dog that, "without provocation," and "subject to division (A)(1)(b) of this section," has killed another dog.  R.C. 955.11(A)(1)(b) provides that a "dangerous dog" does not include a police dog that "has killed another dog while the police dog is being used to assist one or more law enforcement officers in the performance of their official duties."   R.C. 955.11(A)(7) defines the term "without provocation" to mean the dog "was not teased, tormented, or abused by a person" or, that the dog "was not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity."

{¶ 4}   On December 8, 2021, Tate filed a motion requesting the trial court hold a hearing on the dog warden's decision to designate Kaia as a "dangerous dog."  Tate filed his motion in accordance with R.C. 955.222(C), which "provides in part that if the owner of a dog disagrees with the designation of the dog as a dangerous dog, the owner, not later than ten days after receiving notification of the designation, may request a hearing regarding the determination." *Fairfield Cty. Dog Warden v. Seifert*, 2022-Ohio-2900, ¶ 15 (5th Dist.).  Following several delays, on April 6, 2023, the hearing on Kaia's "dangerous dog" designation went forward.  A trial court magistrate presided over the hearing. During the hearing, the magistrate heard testimony and took evidence from a total of six

witnesses. The following is a summary of that testimony and evidence.

{¶ 5} At approximately 3:00 p.m. on December 3, 2021, Dorie was outside in the yard with her owners' two other dogs, one a chihuahua mix and the other a dachshund. While outside, an incident occurred during which Kaia was alleged to have bitten Dorie, puncturing Dorie's lung. This puncture ultimately resulted in Dorie's death by suffocation. There were no eyewitnesses to, or video surveillance footage of, the alleged incident. There was also no expert witness or expert report submitted to explain what likely happened between the two dogs. This is in addition to the limited evidence indicating where the incident allegedly occurred. Therefore, given the dearth of evidence as to what happened prior to Kaia allegedly biting Dorie, the record does not contain any evidence as to whether Kaia bit Dorie "without provocation" as defined by R.C. 955.11(A)(7).

{¶ 6} However, despite the lack of evidence presented regarding the "without provocation" element of the statute, there is no dispute that Kaia and Dorie were both found on Tate's property following the incident. There is also no dispute that, when both dogs' owners discovered what had happened, they noticed that there was blood and blood smears on Tate's property. There is further no dispute that, according to Kaia's veterinarian, Kaia had always been a friendly dog with a good temperament prior to this incident. This is in addition to it being undisputed that, although there was no indication that Kaia had ever moved beyond the boundaries of her electric fence, the dog warden determined that if Kaia had bitten Dorie on Tate's property, she would not have designated Kaia as a "dangerous dog" under R.C. 955.11(A)(1)(a)(ii).

{¶ 7} On April 17, 2023, the magistrate issued a decision upholding the dog warden's decision designating Kaia as a "dangerous dog" under R.C. 955.11(A)(1)(a)(ii). In so holding, the magistrate determined that "Kaia killed [Dorey] and was not provoked." In reaching this decision, the magistrate determined that:

(1) A dog is not a person so, by definition, a dog cannot tease, torment, or abuse another dog for purposes of a "dangerous dog" designation;

(2) Even if a dog could provoke another dog, there was no evidence to indicate Dorey ever teased, tormented, or abused Kaia prior to Kaia biting her; and

(3) While available as a defense to a "vicious dog" designation, trespass is not available as a defense to a "dangerous dog" designation.

{¶ 8} On April 28, 2023, Tate filed an objection to the magistrate's decision. To support his objection, Tate argued that Kaia should not be designated as a "dangerous dog" because she was "provoked" by Dorie when the dog "trespassed onto" his property prior to the incident taking place. Nearly a year later, on January 12, 2023, the trial court issued a decision overruling Tate's objection to the magistrate's decision. In so doing, the trial court affirmed and adopted the magistrate's decision finding a dog could not tease, torment, or abuse another dog for purposes of a "dangerous dog" designation under R.C. 955.11(A)(1)(a)(ii). The trial court also noted that, "unlike a designation for a nuisance dog, trespass is not a valid defense to a dangerous dog designation."

## Tate's Appeal and Two Assignments of Error

{¶ 9} On February 5, 2024, Tate filed a notice of appeal from the trial court's decision. Following briefing, oral argument was held before this court on September 3, 2024. Tate's appeal now properly before this court for decision, Tate has raised the following two assignments of error for review.

*Assignment of Error No. 1:*

{¶ 10} THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING AS A MATTER OF LAW THAT TRESPASS IS NOT A DEFENSE IN A DOG DESIGNATION CASE.

- 4 -

*Assignment of Error No. 2:*

{¶ 11} THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING AS A MATTER OF LAW THAT A DOG CANNOT PROVOKE ANOTHER DOG.

{¶ 12} Within his two assignments of error, Tate challenges various aspects of the trial court's decision upholding the dog warden's decision designating his dog, Kaia, as a "dangerous dog" under R.C. 955.11(A)(1)(a)(ii). To the extent set forth below, and finding merit to Tate's appeal, the trial court's decision designating Kaia as a "dangerous dog" is reversed.

**Ohio's Laws Regarding Dogs, Both "Dangerous" and "Vicious"**

{¶ 13} R.C. Chapter 955 sets forth the law in Ohio concerning dogs. *Girard Zoning Dept. v. Wolfe*, 2023-Ohio-3301, ¶ 26 (11th Dist.). This includes the law regarding "dangerous" dogs and "vicious" dogs. *See* R.C. 955.11(A)(1)(a) and (A)(6)(a). As noted above, pursuant to R.C. 955.11(A)(1)(a)(ii), a "dangerous dog" is defined as a dog that, "without provocation, and subject to division (A)(1)(b) of this section," has killed another dog. R.C. 955.11(A)(1)(b) provides that a "dangerous dog" does not include a police dog that "has killed another dog while the police dog is being used to assist one or more law enforcement officers in the performance of their official duties."

{¶ 14} A "vicious dog" is defined by R.C. 955.11(A)(6)(a) as a dog that, "without provocation and subject to division (A)(6)(b) of this section," has killed or caused serious injury to any person. R.C. 955.11(A)(6)(b) provides that a "vicious dog" does not include either:

> A police dog that has killed or caused serious injury to any person while the police dog is being used to assist one or more law enforcement officers in the performance of their official duties; [or]
>
> A dog that has killed or caused serious injury to any person while a person was committing or attempting to commit a

trespass or other criminal offense on the property of the owner, keeper, or harborer of the dog.

{¶ 15} As stated previously, the term "without provocation" means that the dog "was not teased, tormented, or abused by a person" or, that the dog "was not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity." R.C. 955.11(A)(7). The word "teasing" means "to annoy or to trouble or worry persistently, to be troublesome or to pester." *Montoney v. Delaware Cty. Dog Warden*, 2023-Ohio-2238, ¶ 15 (5th Dist.). "Tormenting" means "conduct which provokes a greater annoyance and implies some torture or pain." *Denman v. Carroll Cty. Dog Warden*, 2022-Ohio-2081, ¶ 12 (7th Dist.). And "abusing" means "mistreatment which includes some physical injury or pain to the animal." *Ali v. Lucas Cty. Dog Warden*, 2017-Ohio-2809, ¶ 12 (6th Dist.). These definitions, although originally recognized by this court in the context of R.C. 955.28, *see Ramsey v. King*, 14 Ohio App.3d 138, 140 (12th Dist.1984), are applicable when determining whether a dog is a "dangerous dog" under R.C. 955.11(A)(1)(a).[1] *Montoney*, citing *Hansen v. Tuscarawas Cty.*, 2019-Ohio-4494, ¶ 11 (5th Dist.).

**Standard of Review**

{¶ 16} Pursuant to R.C. 955.22(B), if a person who is authorized to enforce R.C. Chapter 955, which, as noted above, sets forth the law in Ohio concerning dogs, has reasonable cause to believe that a dog in the person's jurisdiction is a "dangerous dog," the person shall notify the dog's owner, by certified mail or in person, that his or her dog has been designated as "dangerous." *Glass v. Franklin Cty. Dept. of Animal Care & Control*, 2023-Ohio-4804, ¶ 14 (10th Dist.). "A dog owner who disagrees with the

---

1. R.C. 955.28 is Ohio's dog-bite statute that "imposes strict liability for injuries caused by a dog in certain situations." *Harris v. Hilderbrand*, 2023-Ohio-3005, ¶ 12.

designation of their dog as 'dangerous' may request a hearing with the municipal or county court that has territorial jurisdiction over the owner." *Licking Cty. Dog Warden v. Sendykar*, 2019-Ohio-5187, ¶ 14 (5th Dist.). At that hearing, "the person who designated the dog a 'dangerous dog' has the burden of proving, by clear and convincing evidence, that the dog is 'dangerous.'" *Spurrier v. Lake Cty. Dog Warden*, 2018-Ohio-4663, ¶ 3 (11th Dist.). "Clear and convincing evidence is 'that measure or degree of proof . . . which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Butera v. Beesler*, 2023-Ohio-2257, ¶ 36 (11th Dist.), quoting *In re K.H.*, 2008-Ohio-4825, ¶ 42.

{¶ 17} On appeal, "the criminal standard of review to a claim challenging the designation of a dog as dangerous is whether the designation is against the manifest weight of the evidence." *Montoney*, 2023-Ohio-2238 at ¶ 11. "An appellate court's standard of review on a manifest weight challenge of a dangerous dog designation is the same as a manifest weight challenge in a civil case." *Denman v. Carroll Cty. Dog Warden*, 2022-Ohio-2081, ¶ 9. "The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case." *Dunn v. Clark*, 2016-Ohio-641, ¶ 8 (12th Dist.). "When considering a challenge to the manifest weight of the evidence, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered." *Duke Energy Ohio, Inc. v. Hamilton*, 2021-Ohio-3778, ¶ 32 (12th Dist.).

{¶ 18} "A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case." *McGrady v. Muench*, 12th Dist. Warren No.

CA2018-12-145, 2019- Ohio-2677, ¶ 14. This means that, where the judgment is *not* supported by some competent, credible evidence going to all essential elements of the case, the judgment will be reversed on manifest weight of the evidence grounds. *See Hillman v. Watkins*, 2023-Ohio-2594, ¶ 48 (10th Dist.). This, in essence, requires a determination as to whether the trial court's judgment was not only against the manifest weight of the evidence, but also whether the judgment was supported by sufficient evidence, for a judgment that is not supported by sufficient evidence is necessarily also against the manifest weight of the evidence. *See State v. Allen*, 2023-Ohio-340, ¶ 43 (Willamowski, J., Concurring in Part and Dissenting in Part).

**Argument and Analysis of Tate's First Assignment of Error**

**{¶ 19}** In his first assignment of error, Tate argues the trial court erred by finding trespass is not a defense to a dog being designated a "dangerous dog" under R.C. 955.11(A)(1)(a). However, unlike when determining whether a dog is a "vicious dog" under R.C. 955.11(A)(6)(b), trespass is not available as a defense to a "dangerous dog" designation under R.C. 955.11(A)(1)(a). *Sendykar*, 2019-Ohio-5187 at ¶ 15. However, although not available as a defense, and while it may not carry much weight, whether a trespass has occurred is nevertheless a relevant circumstance that may be considered when determining whether a dog is, in fact, a "dangerous dog" under R.C. 955.11(A)(1)(a). *But see id.* (stating "whether [the dog bite victim] was a trespasser to the property when he was injured by [the dog] was not relevant to the trial court's determination of whether the [county dog warden] established [the dog] was a 'dangerous dog'"). Therefore, although we believe it to be a relevant circumstance that may be considered, because trespass is not available as a defense to a "dangerous dog" designation under R.C. 955.11(A)(1)(a), Tate's first assignment of error lacks merit and is overruled.

**Argument and Analysis of Tate's Second Assignment of Error**

{¶ 20} In his second assignment of error, Tate argues the trial court erred by finding that provocation, as defined by R.C. 955.11(A)(7), cannot be committed by another dog, but only by a person. Pursuant to R.C. 955.11(A)(1)(a)(ii), to prove a dog is a "dangerous dog," the dog warden must prove, by clear and convincing evidence, that the dog in question (1) killed another dog (2) without provocation. *Denman*, 2022-Ohio-2081 at ¶ 13. As stated above, R.C. 955.11(A)(7) defines the term "without provocation" to mean that the dog "was not teased, tormented, or abused by a person" or, that the dog "was not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity." R.C. 955.11(A)(7). Given the trial court's judgment in this case, the trial court clearly found the dog warden had proven that Tate's dog, Kaia, was not provoked into killing Dorie, either by someone or something.

{¶ 21} However, while the dog warden provided ample evidence to prove that it was Kaia that killed Dorie, the dog warden presented no evidence, let alone some competent, credible evidence, to prove Kaia killed Dorie *without provocation*. That is to say, the record is devoid of any evidence to prove either that: (1) Kaia was "not teased, tormented, or abused by a person" into killing Dorie; or that (2) Kaia was "not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity" when Kaia killed Dorie. Therefore, given the complete lack of evidence to prove Kaia killed Dorie without provocation, regardless of whether that be by someone or something, the trial court's decision upholding the dog warden's decision designating Kaia as a "dangerous dog" under R.C. 955.11(A)(1)(a)(ii) was not supported by sufficient evidence and was against

the manifest weight of the evidence.[2]  Accordingly, to this extent, Tate's second assignment of error has merit and is sustained.

## Conclusion

{¶ 22} For the reasons outlined above, Tate's appeal from the trial court court's decision designating his dog, Kaia, a "dangerous dog" under R.C. 955.11(A)(1)(a)(ii) is sustained.

{¶ 23} Judgment reversed.


S. POWELL, P.J., and HENDRICKSON, J., concur.

---

2.  The Seventh District Court of Appeals' decision in *Denman v. Carrol Cty. Dog Warden* indicates that provocation, as defined by R.C. 955.11(A)(7), can be committed by another dog, as well as by a person. *Id.*, 2022-Ohio-2081 ¶ 13-24.  Given our resolution of Tate's second assignment of error, we need not decide that question as part of this appeal.  We do note, however, that there exists a grammatical "rule of the last antecedent," according to which a limiting clause or phrase "'should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *Look Ahead Am. v. Stark Cty. Bd. of Elections*, 2024-Ohio-2691, ¶ 20, quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003).  There is, of course, an exception to this rule—a rule of punctuation—that provides "'[a] qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one.'" *Id.* at ¶ 21, quoting *Facebook, Inc. v. Duguid*, 592 U.S. 395, 403-404 (2021).  Therefore, applying these rules of statutory construction to the case at bar, when determining the plain meaning of R.C. 955.11(A)(7), it appears as though the phrase "by a person" should only apply to the verb immediately preceding that phrase, "abused," and not to either "teased" or "tormented."