[Cite as *State v. Allen*, 2023-Ohio-340.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,             CASE NO. 2-22-14

    v.

DARREL W. ALLEN,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2021-CR-141

**Judgment Affirmed**

**Date of Decision: February 6, 2023**

APPEARANCES:

    *Kathleen A. Evans* **for Appellant**

    *Laia Zink* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Darrel W. Allen ("Allen"), appeals the April 27, 2022, judgment of the Auglaize County Court of Common Pleas sentencing him to 24 months in prison after he was convicted by a jury of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree, and criminal damaging in violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree. On appeal, Allen argues that the trial court erred by failing to merge his convictions for purposes of sentencing, and that his convictions are against the manifest weight of the evidence.

<em>Facts and Procedural History</em>

{¶2} In Case No. 2021-CRB-00389, Allen was alleged to have committed two offenses while he was on probation.[1] Tr. 105-106, 132. Ex. 2. *See* Tr. 103. On July 30, 2021, the trial court granted a motion to release Allen on his own recognizance subject to several "special conditions of the bond." Ex. 3. This order included the following conditions:

> **1.   The Defendant shall neither consume nor possess any alcoholic beverages, harmful intoxicants, or substances of abuse * * *.**
>
> * * *
>
> **4.   The Defendant shall not commit any criminal or traffic offense that carries the potential of a jail or penitentiary sentence.**

---

[1] The charges in Case No. 2021-CRB-00389 are unrelated to the case presently before this Court.

\* \* \*

**6.    The Defendant shall wear the SCRAM device and follow all rules of wearing the device.** \* \* \*

Ex. 3. Tr. 103, 106. *See* Tr. 165. This SCRAM device was an ankle monitor that was placed on Allen to determine whether he had alcohol in his system.[2] Tr. 106-107, 127. In this case, the SCRAM unit was not programmed to provide GPS location data or to send an immediate notification to Allen's probation officers if it was removed. Tr. 124, 127-128. Allen signed an agreement that stated he would not remove the SCRAM unit. Tr. 115, 118. Ex. 4.

{¶3} On August 10, 2021, Chief Chris McKinney ("Chief McKinney") of the New Knoxville Police Department was dispatched to Allen's residence in response to a report of a domestic dispute. Tr. 86. At the house, Allen's mother approached Chief McKinney. Ex. 1. Tr. 134-135. She informed the police that Allen was in the house; that he was on probation; that he had cut off his ankle monitor; and that Allen had thrown the ankle monitor at her. Ex. 1. Tr. 137. As Chief McKinney and Allen's mother spoke, Sergeant John Kaeck ("Sergeant Kaeck") of the Auglaize County Sheriff's Office arrived at Allen's residence. Tr. 135.

---

[2] SCRAM is an acronym that stands for "Secure Continuous Remote Alcohol Monitoring." Tr. 113.

{¶4} Chief McKinney and Sergeant Kaeck approached a door to the residence and spoke with Allen briefly. Ex. 1. Tr. 94. In their initial conversation, Allen denied being on probation and denied having to wear an ankle monitor.[3] Ex. 1. Tr. 136, 178. Allen then returned into the house while Sergeant Kaeck took steps to verify Allen's status. Ex. 1. Tr. 136-137. After determining that Allen was under supervision and was supposed to be wearing an ankle monitor, the police apprehended Allen and placed him into one of the police cruisers. Ex. 1. Tr. 137.

{¶5} Sergeant Kaeck then went into the residence where he discovered an ankle monitor located on the arm of a recliner in the living room. Tr. 138, 141. Ex. 6, 8. The writing on the side of the ankle monitor indicated that this unit was for "continuous alcohol monitoring" and was the property of Ohio AMS. Ex. 7. Tr. 141. The band on the ankle monitor had been cut. Tr. 140. Ex. 8, 9. Sergeant Kaeck noticed that there was a can of alcohol on Allen's desk in his bedroom. Tr. 140-141. Ex. 10.

{¶6} On August 13, 2021, Allen was indicted on one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree, and one count of vandalism in violation of R.C. 2909.05(B)(2), a felony of the fifth

---

[3] The trial testimony indicates that Allen's probation began on October 2, 2020 and was "scheduled to terminate [on] October 2, 2022." Tr. 105. However, the ankle monitor was placed on Allen on July 30, 2021. Tr. 106, 115. Ex. 4. Allen was alleged to have committed an offense that was unrelated to this case while he was on probation. Tr. 102-103. He was, therefore, on bond at the time of the incident on August 10, 2021. Tr. 103.

degree. Doc. 1. These charges became the basis of Case No. 2021-CR-0141.[4] Doc. 1. On April 18 and 19, 2022, a jury trial was held on these charges. Doc. 106. At the close of the State's evidence, the Defense made a Crim.R. 29 motion on the count of tampering with evidence. Doc. 106. Tr. 157. The trial court denied this motion. Doc. 106. Tr. 169.

{¶7} The Defense also made a Crim.R. 29 motion on the count of vandalism. Doc. 169. Tr. 152. On this charge, the trial court concluded that the State had not presented evidence to establish each of essential elements of the offense of vandalism as set forth in R.C. 2909.05. Doc. 106. Tr. 157. However, The trial court found that the State had presented evidence sufficient to establish a conviction for the lesser included offense of criminal damaging in violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree. Doc. 106. Tr. 155-157. On April 19, 2022, the jury returned verdicts of guilty on the count of tampering with evidence and on the count of criminal damaging. Doc. 104-105. On April 27, 2022, Allen was sentenced to 24 months in prison on the tampering with evidence conviction, and time served on the criminal damaging conviction. Allen now brings this instant appeal from the trial court's judgment, asserting the following two assignments of error:

---

[4] This is the case that is presently before this Court in this appeal.

**First Assignment of Error**
**The trial court erred by not merging Darrel Allen's convictions**
**for tampering with evidence and criminal damaging.** *State v.*
*Ruff*, **143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892; R.C.**
**2941.25 (April 27, 2022 Judgment Entry).**

**Second Assignment of Error**
**Mr. Allen's convictions are not supported by the manifest weight**
**of the evidence. Fifth and Fourteenth Amendments, United States**
**Constitution; Article I, Section 16, Ohio Constitution;** *State v.*
*Thompkins*, **78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). (April**
**27, 2021 Judgment Entry).**

For ease of discussion we will consider Allen's second assignment of error

before we consider his first assignment of error.

*Second Assignment of Error*

**{¶8}** Allen argues that his convictions for criminal damaging and

tampering with evidence are against the manifest weight of the evidence.

Legal Standard

**{¶9}** The manifest weight of the evidence analysis examines whether the

State has carried its burden of persuasion at trial. *State v. Wilson*, 3d Dist. Allen

No. 1-20-46, 2022-Ohio-504, ¶ 58. In this process, "an appellate court's function *

* * is to determine whether the greater amount of credible evidence supports the

verdict." *State v. Harvey*, 3d Dist. Marion No. 9-19-34, 2020-Ohio-329, ¶ 12,

quoting *State v. Plott*, 3d Dist. Seneca Nos. 13-15-39, 13-15-40, 2017-Ohio-38, ¶

73.

{¶10} Accordingly, an "appellate court sits as a 'thirteenth juror' * * *." *State v. Barga*, 3d Dist. Shelby No. 17-17-14, 2018-Ohio-2804, ¶ 19, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 388, 1997-Ohio-52.

> **Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting *Thompkins* at 387, 678 N.E.2d 541.**

*State v. Randle*, 3d Dist. Marion Nos. 9-17-08, 9-17-09, 2018-Ohio-207, ¶ 36 quoting *Plott* at ¶ 73, quoting *Thompkins* at 387.

{¶11} "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 3d Dist. Hancock No. 5-17-09, 2017-Ohio-8937, ¶ 38, quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 3d Dist. Allen No. 1-16-29, 2016-Ohio-8398, ¶ 27, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Legal Analysis

{¶12} We will examine Allen's conviction for criminal damaging before we examine his conviction for tampering with evidence. To establish a conviction for

criminal damaging in violation of R.C. 2909.06(A)(1), the State had to prove that Allen, "knowingly, by any means[,]" "cause[d] or create[d] a substantial risk of physical harm to any property of another without the other person's consent."

{¶13} At trial, Michelle Kempfer-King ("Kempfer-King") and Tom Myers ("Myers"), who are probation officers employed by the Auglaize County Municipal Court, gave testimony indicating that the ankle monitor belonged to a company called Ohio AMS. Tr. 109, 125. The State introduced a photograph of the ankle monitor, which had a sticker on the side that stated "Property of: Ohio AMS." Ex. 7. The State also introduced several pictures of the severed strap on the ankle monitor and an agreement ("Ankle Monitor Agreement") that Allen signed when he received the ankle monitor. Ex. 4, 8, 9. The Ankle Monitor Agreement stated that the signatory would "be held responsible for damage, other than due to normal wear," and would be charged $175.00 to replace the strap on the ankle monitor. Ex. 4.

{¶14} Further, Allen testified in his own defense at trial and admitted that he cut the strap on the ankle monitor. Tr. 175. However, he testified that he cut the ankle monitor strap because he was having a medical emergency. Tr. 176. The Ankle Monitor Agreement that Allen had signed stated that he could remove the ankle monitor "[o]nly in an emergency or with the prior permission of * * * [his] officer or agent." Ex. 4. He testified that, on the morning of August 10, 2021, he

had his mother drive him to the courthouse because he wanted Myers to adjust the ankle monitor. Tr. 174-175. He stated that the ankle monitor was too tight and was causing him to lose sleep at night. Tr. 174. Allen stated that Myers was out of his office and was unavailable to adjust the ankle monitor. Tr. 175. Allen testified that, after he returned home, his "foot was starting to discolor * * *" and that the ankle monitor was causing swelling. Tr. 175. He further stated that his ankle was numb and turning a "reddish * * * bordering on a bluish color." Tr. 176, 182.

{¶15} However, on cross-examination, he stated that he did not ask anyone else at the courthouse to contact Myers to see how he could address this issue. Tr. 187. He reported the following:

> **[W]hen I went into the office, there was a cleaning lady in there with her son and I asked, 'Hey, where's Tom at?' And Michelle wasn't there either, I didn't ask about Michelle, but she said Tom was in St. Marys.**
>
> **\* \* \***
>
> **I didn't get a hold of Tom, I didn't do my diligence to get a hold of Tom. I could have done what you're saying and asked around, maybe got a hold of him, maybe got him to come back from St. Marys and adjust it, but I didn't do that.**

Tr. 182, 187. He was also asked why he did not stop by the EMS station on the way home to have his ankle examined if he was experiencing a medical emergency. Tr. 182. In response, Allen stated that he "didn't think it was that serious * * *" and asserted that the Ankle Monitor Agreement indicated that, "if you're in an

emergency, you can cut it off, and you'll just have to pay the hundred and seventy-five dollars to replace the strap." Tr. 182-183.

{¶16} Allen also admitted that, when the police came to his residence, he did not tell them the truth about being on probation or about having been released on his own recognizance. Tr. 178. He explained that he did not believe that he was on probation because he had been released on bond. Tr. 185. He was then asked why he did not tell the police about his medical emergency. Tr. 178. He said,

> **I was hoping that I could just play it off and that, you know, because I was assuming, cause my mom has done this before, like, like, the reason I am on probation is because they came to my house when I was moving all my stuff. I think her ambition was to prevent me from moving out of her house, which is what I wanted to do. So she called the cops the day I'm actually literally loading my stuff into my vehicle to leave and says I beat her up. And so the cops just show up out of nowhere, and she's told them that I've beat her up * * *.**

Tr. 180. He further explained that he was not forthcoming about the medical emergency with the police because he was "assuming that they don't know that I had the ankle monitor at all." Tr. 185. He admitted that he "lied" when the police "started asking about the ankle monitor * * *." Tr. 190.

{¶17} The prosecution asked Allen about the report that his mother had given to the police when they arrived at his residence. Tr. 180. He indicated that she was not being truthful in reporting that he had thrown the ankle monitor at her

face after he had cut it off.  Tr. 180.  The prosecution then inquired into why he had a can of beer on his desk in his bedroom.  Tr. 188.  Allen stated,

> **To be honest, I think my mom put the beer can right there, bigger than crap, in front of everybody to promote the idea that she's getting me arrested because she doesn't want me to leave * * * and she's learned that every time she calls the police, I lose my job, I lose my car, I lose my place to live, and I'm back at her house, which is what she wants.**

Tr. 188.  After Allen was done testifying, Myers was called as a rebuttal witness. He testified that he was not at the Auglaize County Municipal Court on August 10, 2021 because he was at his St. Marys office on Tuesdays.  Tr. 200.  He stated that the staff at the Auglaize County Municipal Court knew where he was and that he was available for calls.  Tr. 200.

{¶18}  Having examined the evidence presented at trial, we find no indication that the jurors lost their way by convicting Allen of criminal damaging.  "A verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's [evidence] rather than the defendant's version of the events." *State v. Risner*, 3d Dist. Hardin Nos. 6-21-12, 6-21-13, 2022-Ohio-3877, ¶ 47, quoting *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Further, a "fact finder is free to believe all, part or none of the testimony of each witness appearing before it."  *State v. Petty*, 10th Dist. Franklin Nos. 11AP-716, 11AP-766, 2012-Ohio-2989, ¶ 38.  Here, the jury was free to disbelieve Allen's claims that he was in a medical emergency, particularly since he did not seek any

alternative means of treatment and since he had a beer can in his room. Accordingly, we conclude that Allen's first argument under this assignment of error is without merit.

{¶19} We turn now to Allen's conviction for tampering with evidence. To establish a conviction for tampering with evidence in violation of R.C. 2921.12(A)(1), the State must prove that the defendant, "[1] knowing that an official proceeding or investigation [was] * * * in progress, or is about to be or likely to be instituted, * * * [2] [a]lter[ed], destroy[ed], conceal[ed], or remove[d] any record, document, or thing, [3] with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1); *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 11.

{¶20} Allen argues that his conviction for tampering with evidence was against the weight of the evidence because he explicitly testified that his sole purpose for cutting off the SCRAM device was for a medical emergency, because his ankle bracelet was too tight. Further, he argues that the State provided "little" evidence of Allen's purpose in cutting off the SCRAM device, merely suggesting that Allen likely removed the device to consume alcohol. He contends that the presence of a beer can in his bedroom was not enough to establish the conviction, particularly given Allen's claim of a medical emergency.

**{¶21}** Again, the jury was free to disbelieve any or all of Allen's testimony, particularly the testimony that seemed geared toward minimizing his actions or his culpability. Allen's medical claims were especially dubious given that he did not go to the hospital or make any further attempt to contact the proper authorities regarding adjusting the SCRAM device. Moreover, a jury could readily infer that Allen acted "purposely" in removing the SCRAM device given that he was aware of what the device was tracking and given that a can of beer was found to be in his room. *See* R.C. 2901.22(A).

**{¶22}** Furthermore, we have previously considered similar facts and held that a conviction for tampering with evidence was supported where an individual removed an ankle monitor "with the specific intention of impairing its value *or availability as evidence*" in an investigation. (Emphasis added.) *State v. Shepherd*, 3d Dist. Hardin Nos. 6-19-02, 6-19-03, 2020-Ohio-3915, ¶ 23. In *Shepherd*, we reasoned as follows:

> **Notably, Shepherd fails to acknowledge that he was not only the subject of an ongoing investigation as the result of his community-control sanctions, but that he knew that he was the subject of that investigation.** *See* **[***State v.***] *Thomas***, [1st Dist. No. 14-CA-90,] 2015-Ohio-2116, at ¶ 15. Accordingly, as part of the ongoing investigation into Shepherd's adherence to his community-control sanctions, which included adherence to the terms and conditions of the Recovery Court—one of which being to not only wear the ankle monitor but to not tamper with it or remove it— the weight of the evidence reflects that Shepherd's wearing of the ankle monitor was a fact of value to that ongoing investigation. Therefore, we cannot say that the trier of fact clearly lost its way**

**and created such a manifest miscarriage of justice that Shepherd's conviction must be reversed and a new trial ordered. Thus, Shepherd's tampering-with-evidence conviction is not against the manifest weight of the evidence.**

Id. at ¶ 25. We find that the reasoning in *Shepherd* is applicable to the case *sub judice*, and we decline to depart from its holding as suggested by the dissent.[5]

**{¶23}** In conclusion, we do not find that this is an exceptional case where the jury clearly lost its way. After reviewing the record and the applicable legal authority, we do not find that Allen's convictions for criminal damaging and tampering with evidence are against the manifest weight of the evidence. Therefore, Allen's second assignment of error is overruled.

*First Assignment of Error*

**{¶24}** Allen argues that the trial court erred by failing to merge his convictions for criminal damaging and tampering with evidence at sentencing.

Legal Standard

**{¶25}** " 'Whether offenses are allied offenses of similar import is a question of law that this Court reviews de novo.' " *State v. Jessen*, 3d Dist. Auglaize No. 2-18-16, 2019-Ohio-907, ¶ 22, quoting *State v. Frye*, 3d Dist. Allen No. 1-17-30, 2018-Ohio-894; *see generally State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-955.

---

[5] The dissenting judge herein also dissented in *Shepherd*.

Relevant Authority

**{¶26}** Revised Code 2941.25, Ohio's multiple-count statute, states:

**(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.**

**(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.**

**{¶27}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Supreme

Court of Ohio held the following with regard to determining allied offenses:

**1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.**

**2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.**

**3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.**

The Supreme Court in *Ruff* explained:

**At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct.**

-15-

> **The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.**

*Ruff*, 2015-Ohio-995 at ¶ 26.

Legal Analysis

{¶28} Allen argues that his conviction for criminal damaging and his conviction for tampering with evidence should have merged at sentencing; however, he did not object to the failure to merge at the trial court level, so we review the matter for plain error. Importantly, in *State v. Bailey*, --- Ohio St.3d ---, 2022-Ohio-4407, the Supreme Court of Ohio has recently revisited plain error in the context of allied offenses cases, holding as follows:

> **Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus ("Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice"). To prevail under the plain-error doctrine, Bailey must establish that "an error occurred, that the error was obvious, and that there is 'a reasonable *probability* that the error resulted in prejudice,' meaning that the error affected the outcome of the trial."**

> **(Emphasis added in [*State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459,].)** *State v. McAlpin*, —— Ohio St.3d ——, 2022-Ohio-1567, —— N.E.3d ——, ¶ 66, quoting *Rogers* at ¶ 22; *see* also *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 52.

(Emphasis *sic*). *Bailey* at ¶ 8.

{¶29} The Supreme Court of Ohio emphasized in *Bailey* that although determining whether R.C. 2941.25 has been properly applied is a legal question, "it necessarily turns on an analysis of the facts, which can lead to exceedingly fine distinctions. *Id.* at ¶ 11. Further, the Supreme Court of Ohio determined that to reverse for an error under the plain error test, the error has to be "obvious." *Id*. at ¶ 14. The Supreme Court of Ohio held, "Even if we were to assume that the trial court erred by not merging the kidnapping and rape counts, the facts of the case indicate that such an error was not obvious." *Id*. Stated differently, the plain-error doctrine

> **is warranted only under exceptional circumstances to prevent injustice. *See Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus; *see also United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936) ("In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings").**

{¶30} With all of this in mind, we will proceed to examine whether the trial court committed plain error by failing to merge the criminal damaging and tampering with evidence convictions in this case for purposes of sentencing. Allen

contends that his convictions should have merged because the single act of cutting off the SCRAM device constituted both of the crimes of which he was convicted. The State disagrees, arguing that the victim of the criminal damaging was the company that owned the SCRAM device and leased it to the Auglaize County Municipal Court, while the victim of the tampering with evidence offense was the State of Ohio. Different victims from different crimes would make the offenses of dissimilar import, and they would not merge for purposes of sentencing. *See State v. Ramunas*, --- Ohio St.3d ---, 2022-Ohio-4199, ¶ 23.

**{¶31}** After reviewing the record through the lens of whether any error with respect to failure to merge these crimes was "obvious" under *Bailey*, we find that the trial court did not commit plain error. We see no error that " 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings[.]' " *Bailey* quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936). Moreover, although not raised as in an error in the *Shepherd* case discussed previously herein, *Shepherd* received separate, concurrent sentences on the same tampering with evidence and criminal damaging charges. *Shepherd*, *supra*, at ¶ 7.

**{¶32}** In sum, we do not find that plain error was present in this case with respect to merger. Therefore, Allen's first assignment of error is overruled.

*Conclusion*

**{¶33}** Having found no error prejudicial to Allen in the particulars assigned and argued, the judgment of Auglaize County Court of Common Pleas is affirmed.

**Judgment Affirmed**

**MILLER, P.J., Concurring with Opinion.**

**{¶34}** I agree with the lead opinion finding the jury's verdict is not against the manifest weight of the evidence and that the offenses for which Allen was convicted, criminal damaging and tampering with evidence, do not merge. I write additionally to provide additional insight regarding the manifest weight issue.

**{¶35}** First, regarding the Allen's second assignment of error challenging the manifest weight of the evidence in support of the conviction for tampering with evidence, R.C. 2921.12(A)(1), provides:

> **No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:**
>
> **(1)    Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.**

Stated succinctly, "There are three elements of this offense: (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, (3) the

purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 11.

{¶36} On appeal, Allen does not challenge the fact that there was an official proceeding or ongoing investigation. Allen had been criminally charged in a separate court proceeding. He was released from custody on bond with various conditions including that he refrain from the consumption of alcohol. To ensure compliance with this condition of his release, an additional bond condition required Allen to wear a SCRAM device. The alcohol monitoring by this device was effectively a continuous investigation of his bond condition to not consume alcohol. *State v. Shepherd,* 3d Dist. Hardin No. 6-19-02 and 6-19-03, 2020-Ohio-3915 ¶ 18; *State v. Thomas,* 5th Dist. Licking No. 14-CA-90, 2015-Ohio-2116, ¶ 15 (concluding that the defendant was "subject of an official investigation as part of his ongoing probation and supervision"). Second, Allen does not dispute that he removed the SCRAM monitor from his ankle. Instead, he challenges only the third element claiming the weight of the evidence did not establish that he cut off the monitor with purpose to impair its value as evidence. He claims, "In this case, the state failed to meet its burden of persuasion as to the third element." Appt's Br. at 11. Instead, he contends his purpose in cutting off the monitor was due to a medical emergency. *Id.*

**{¶37}** Of particular note is the fact Allen does not raise an issue claiming the SCRAM monitor or the data it collected was not evidence. I find it improper to raise an issue that the parties did not present and were not given an opportunity to brief or argue. *State v. Moore*, 154 Ohio St.3d 94, 2018-Ohio-3237, ¶ 17 (while a court of appeals need not pass on errors which were not assigned or argued, this power is discretionary and when a court does so, it should give the parties notice of its intention and an opportunity to brief the issue). As the appellate court, we should not manufacture an argument for an appellant, and then proceed to address it. App.R. 12(A)(1)(b) and (A)(2); *see also, In re L.R.,* 9th Dist. Summit Nos. 29266 and 29271, 2019-Ohio-2305, ¶ 18; *In re X.S.,* 3d Dist. Mercer Nos. 10-20-09, 10-20-10, 10-20-11, 10-20-12, and 10-20-13, 2021-Ohio-1174, ¶ 66; *Conley v. Wapakoneta City School Dist.,* 3d Dist. Auglaize No. 2-21-18, 2022-Ohio-2915, ¶ 43.

**{¶38}** Additionally, the analysis of R.C. 2921.12(A)(1) by the dissent fails to consider the instances when a defendant wears a SCRAM monitor with the specific intent to create evidence for the parties' later use. For example, it is not uncommon for the State and a defendant to jointly agree to the defendant wearing a SCRAM or GPS monitor as a bond condition in order for the defendant to obtain his release from custody and for the prosecution to provide a measure of protection to the alleged victim or the community. Compliance, or the lack thereof, as demonstrated

by the monitoring device becomes relevant to additional issues relating to bond raised by either the defendant or the State. Based on the evidence obtained by the particular monitoring device, the defendant may then request additional liberties as part of pre-trial release. Conversely, evidence of removing the device or other noncompliance may result in the State seeking re-incarceration until trial. This evidence is relevant to sentencing if the defendant is convicted of the offense for which he or she was released on bond.

{¶39} An additional example is a defendant charged with an alcohol related driving offense who requests to wear a SCRAM monitor in order to obtain certain driving privileges while his or her case is pending. A monitored period of sobriety is frequently used by the defendant to seek a reduction in the charge as part of plea bargain. Alternatively, a defendant who cuts off a SCRAM monitor tampers with evidence demonstrating an inability to maintain sobriety. As with the prior example, this tampering may be used to revoke driving privileges or as a sentencing consideration.

{¶40} In sum, for the reasons stated by the lead opinion, and for these additional reasons, I concur that the trial court's judgment should be affirmed.

**WILLAMOWSKI, J., Concurring in Part and Dissenting in Part.**

**{¶41}** I concur with the majority's conclusion that Allen's conviction for criminal damaging is supported by sufficient evidence. However, I respectfully dissent from the majority's conclusion that Allen's conviction for tampering with evidence is supported by sufficient evidence. In this appeal, the key question is: with what existing evidence did Allen tamper?

**{¶42}** As an initial matter, I would note that, while Allen raised a manifest weight challenge against his conviction for tampering with evidence, "a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency" since there must be sufficient evidence "to take a case to the jury * * *." *State v. Roberts*, 9th Dist. Lorain No. 96CA006462, 1997 WL 600669, *2 (Sept. 17, 1997). "[A]lthough weight and sufficiency are separate concepts, when evidence is insufficient, it is also necessarily against the manifest weight." *State v. Straley*, 2d Dist. Clark No. 2012-CA-34, 2013-Ohio-510, ¶ 16. "[A] conviction based on legally insufficient evidence constitutes a denial of due process." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, 546 (1997).

**{¶43}** The concurring opinion questions the necessity of considering whether the physical ankle monitor or the data generated constituted existing evidence and suggests that the arguments of the appellant do not prompt such an analysis.

However, the appellant challenged his convictions as being against the manifest weight of the evidence. To render a judgment on such a challenge, this Court must pass upon the question of whether sufficient evidence supports his convictions. A conviction that is not supported by sufficient evidence is necessarily against the manifest weight of the evidence.

{¶44} "[A] conviction based on legally insufficient evidence constitutes a denial of due process." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). This necessarily implicates the constitutional rights of the accused. If a sufficiency analysis reveals the State did not produce evidence to substantiate an element of the challenged offense, it is the prerogative of this Court to reverse the resulting conviction. In this case, to pass upon the question of whether Allen tampered with any existing evidence is to pass upon whether Allen actually committed the crime for which he received a felony conviction. No one should be punished for a crime that was not committed.

{¶45} Further, Allen also challenges his conviction on the grounds that his conduct did not constitute the offense of tampering with evidence. In his testimony at trial, he attempted to establish that his purpose in cutting off the ankle monitor was other than to impair its value or availability as evidence. Thus, the question of whether his conduct constituted the offense of tampering with evidence and satisfies the criterion of the third element of this offense has been placed before this Court

and should be thoroughly analyzed. If evidence was not presented at trial to substantiate this element, no argument from the State or Defense can change this reality.

**{¶46}** To establish a conviction for tampering with evidence in violation of R.C. 2921.12(A)(1), the State must prove that the defendant, "[1] knowing that an official proceeding or investigation [was] * * * in progress, or is about to be or likely to be instituted, * * * [2] [a]lter[ed], destroy[ed], conceal[ed], or remove[d] any record, document, or thing, [3] with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1). *See State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11 (holding that there are three elements for this offense).

**{¶47}** In this case, the State did not present sufficient evidence to establish that Allen's actions with regard to an identified "record, document, or thing" met the requirements of R.C. 2921.12(A)(1). The testimony at trial suggests that the State intends either the data that could possibly have been created if Allen had not cut off the SCRAM unit or the physical ankle monitor itself to be considered as the evidence that Allen tampered with. However, the evidence presented regarding the data that could possibly have been created cannot satisfy the second or third

elements of this offense.[6]  Further, in this case, the evidence presented regarding the physical ankle monitor does not satisfy the third element of this offense.

**{¶48}** As to the data, Kempfer-King, a probation officer with the Auglaize County Municipal Court, testified that the SCRAM unit continuously monitored whether the wearer had alcohol in his or her system.  Tr. 106, 108.  Kempfer-King further testified that the data from the ankle monitor was transmitted to a company called Ohio AMS.  Tr. 109, 126.  However, the State did not present any evidence establishing that the act of simply cutting the ankle monitor strap affected the data that had already been generated and transmitted to Ohio AMS in any way.  Thus, the data that had already been generated before Allen took off the ankle monitor by simply cutting its fastening strap does not satisfy the second element of this offense because the State did not present any evidence that he tampered with any of the data that had already been generated before cutting the fastening strap of the SCRAM unit.

**{¶49}** This leads to the question of whether Allen can be considered to have tampered with evidence because he may have prevented more data from being created by removing the ankle monitor.  In other words, can data that was never generated and that never existed qualify as a "record, document, or thing" within

---

[6] In my analysis, I will also briefly examine the reasons why the data that was generated before Allen cut off the ankle monitor does not satisfy the second or third elements of this offense.

the meaning of R.C. 2921.12(A)(1)? As a matter of basic logic, for a person to have tampered with evidence, the evidence must have existed.

> **Clearly, if the evidence is destroyed, recovery is impossible. However, the state must show, inter alia, that the evidence existed, and it must identify that evidence as the same 'thing' that the defendant tampered with.**

*State v. Caute*, 8th Dist. Cuyahoga No. 92169, 2009-Ohio-5222, ¶ 74. *See* Corpus Juris Secundum, Obstructing Justice, Section 63 (2022) ("The existence of the thing allegedly destroyed or concealed, at least prior to the act, is an essential matter of proof without which a conviction of the offense [of tampering with evidence] cannot be sustained * * *.").

{¶51} It is not unreasonable to assume that, if Allen had not cut off the ankle monitor, the SCRAM unit could have continued to generate and transmit data to Ohio AMS. However, this data was never actually generated and did not, therefore, exist at the time Allen took off the ankle monitor. Thus, even if he had prevented the SCRAM unit from generating additional data, Allen cannot be held to have tampered with data that was never created because evidence must exist for a person to tamper with it.

{¶52} This is like a situation in which a person turns off a smart phone before committing a crime that is likely to be investigated in order to prevent an electronic record of his whereabouts from being generated or transmitted. In such a scenario, this person is taking steps to prevent evidence from being created, but this person is

not tampering with any evidence. In such a scenario, the location data was never created and could not, therefore, be tampered with. However, if this person had left his smart phone on while committing this crime and later deleted the electronic record of his movements that had actually been created, this act, if meeting all of the requisite elements, could constitute the offense of tampering with evidence. In such a scenario, evidence of the person's whereabouts had been created, and the person then took steps to destroy the actually existing evidence.

**{¶53}** An expansive interpretation of R.C. 2921.12(A)(1) which would allow conduct that prevents the creation of evidence to be prosecuted as tampering with evidence could then include acts that range from a person putting on gloves to prevent fingerprints from being left at a crime scene to a person wearing a mask to prevent his image from being captured by a security camera. This would criminalize acts that go beyond the proper scope of R.C. 2921.12(A)(1). Properly understood, R.C. 2921.12(A)(1) criminalizes an act where the offender understands the evidentiary value of an existing "record, document, or thing" and then takes steps to "alter, destroy, conceal, or remove" that evidence. R.C. 2921.12(A)(1).

**{¶54}** As a substitute for identifying an existing record, document, or thing in this argument, the State, in its brief, points to the fact that a can of beer was found on a desk in Allen's room, arguing that Allen may have been planning to consume the beer later while he was not wearing the SCRAM unit. Appellant's Brief, 7. Tr.

140, 213. This argument pulls us into the realm of counterfactuals: *if* Allen had not cut off the ankle monitor, then there *may have been* some evidence that he *may have* consumed some alcohol *if* he had chosen to drink a beer. But since we are in the realm of counterfactuals, we may as well surmise that, *if* Allen had not cut off the ankle monitor, then he *may not* have consumed the alcohol because the SCRAM unit *would have* alerted Ohio AMS of his alcohol consumption, and no evidence, therefore, *would have been* created.[7]

{¶55} At trial, the State underscored the wholly speculative nature of this argument, asserting that "[t]his alcohol monitor *would have then* picked up any drinking he *was going to do* with that beer can *if* it *would have* remained on his leg." (Emphasis added.) Tr. 213. But the facts of this case demonstrate the dangers of convicting a defendant on the basis of speculative arguments. Even if Allen cut off the ankle monitor because he wanted to consume alcohol at a later time, there is no indication he ever did or even had the opportunity to do so. In this case, Allen's mother intervened, calling the police at the time that he cut off the ankle monitor and threw it at her head. His mother's intervention deals a death blow to the argument that the SCRAM unit *would have* collected incriminating data.

---

[7] We note that Condition #1 of the terms of his supervision stated that Allen "shall neither consume nor *possess* any alcoholic beverages * * *." (Emphasis added.) Ex. 3. Thus, evidence that Allen possessed an alcoholic beverage would have been sufficient to find a violation of Condition #1.

-29-

{¶56} In short, the State speculates that, if the facts of this case were different, there would have been evidence that establishes that Allen may have chosen to have consumed some alcohol. Tr. 213.[8] Certainly, if the facts of this case were different, the State may have had sufficient evidence to support this conviction. But we must render decisions on the basis of the actual facts that are before us and not on the basis of what facts might have been before us if the defendant had acted differently. The second element of this offense requires the State to identify a "record, document, or thing * * *." R.C. 2921.12(A)(1). The data that was never generated after Allen took off the ankle monitor never existed and could not, therefore, be a "record, document, or thing" that could be tampered with. *Id*. Thus, the data that could possibly have existed in an alternate timeline where Allen had acted otherwise cannot satisfy the second element of this offense and cannot serve as the basis of a conviction for tampering with evidence in this case.

{¶57} Besides failing to meet the second element, arguments about the data also do not substantiate the third element of this offense under the facts of this case. This final element requires the State to prove that the defendant acted "with purpose to impair [the record, document, or thing's] value or availability as evidence * * *." R.C. 2921.12(A)(1). At trial, the State did not present any evidence that Allen cut

---

[8] There is no indication in the record that this can of beer was open, empty, or partially consumed. Tr. 138-139, 140-141, 187-188. Further, the top of the beer can is not visible in the picture introduced into evidence. Ex. 9; Tr. 145. *See also* Tr. 213.

the strap of the ankle monitor with the purpose of tampering with any of the existing data that had already been generated.

**{¶58}** Further, the data that was never created also cannot satisfy the third element of this offense. As to the intent component of this element, the State can, at best, argue that Allen acted with the intention of preventing evidence from possibly being created. But this is not sufficient to substantiate this element. Returning to the text of R.C. 2921.12(A)(1), the third element of this offense requires the State to prove that the defendant acted "with purpose to *impair* * * * [the record, document, or thing's] *value or availability* as evidence * * *." (Emphasis added.) R.C. 2921.12(A)(1). The word "impair" means "to diminish in function, ability, or quality * * *." *Merriam-Webster.com Dictionary* (2023). Thus, the third element definitionally assumes that there existed evidence that has some value or availability that could then be impaired. In other words, the evidence had to have these qualities in order for these qualities to be diminished by the purposeful act of the defendant.

**{¶59}** At the time that Allen cut the strap of the SCRAM unit, the data that could possibly have been created in the future was not existent. Allen could not, therefore, act to impair or diminish its value or availability. Similarly, data that has not been created simply cannot establish any fact of significance and does not, therefore, have an evidentiary value that the defendant can act to impair or diminish.

The data had to be generated *before* Allen could impair its value or availability. Thus, Allen could not have acted with purpose to impair the value or availability of evidence that was never created. Thus, the State did not establish that Allen tampered with any data in cutting the ankle monitor's strap.

**{¶60}** The concurrence notes that ankle monitors are placed onto a person with the specific intent to create evidence that can be used for a variety of purposes. However, the data that has not been generated never existed regardless of the intent of the parties to create evidence and regardless of what purposes the parties hope this data to serve. For the reasons set forth above, evidence must still exist for it to even be possible for a person to tamper with evidence.

**{¶61}** I will turn now to examining whether the State established that Allen's actions with regard to the physical ankle monitor itself can constitute the offense of tampering with evidence under the facts of this particular case. The SCRAM unit at least exists and can, therefore, certainly satisfy the second element of this offense. However, R.C. 2921.12(A)(1) also requires the State to prove a third element, namely, that the defendant acted "with purpose to impair * * * [the record, document, or thing's] value or availability as evidence in such proceeding or investigation[.]" R.C. 2921.12(A)(1). Under Ohio law, "[a] person acts purposely when it is the person's specific intention to cause a certain result * * *." R.C. 2901.22(A). As a general matter, "[f]or the third element of 'purpose' to be met,

the act that constitutes tampering must be a separate act from those that make up the crime itself." *State v. Crocker*, 2015-Ohio-2528, 38 N.E.3d 369, ¶ 37 (4th Dist.) (basing this holding on the rule of lenity).

**{¶62}** Further, in *State v. Straley*, the Ohio Supreme Court resolved a conflict between the Second and Ninth District Courts of Appeals regarding the requirements of this third element. *Straley,* 2014-Ohio-2139, *supra*, at ¶ 14-15. In its analysis, "the Ninth District focused on the 'evidentiary value'" of the thing that had been concealed or removed. *Id.* at ¶ 15, citing *State v. Skorvanek*, 182 Ohio App.3d 615, 2009-Ohio-1709, 914 N.E.2d 418, ¶ 23 (9th Dist.) (*abrogated by Straley, supra*). By contrast, the Second District focused on whether the "evidence related to an ongoing or likely investigation." *Id.* at ¶ 14, citing *State v. Straley*, 2013-Ohio-510, *supra*.

**{¶63}** In *Straley*, the Ohio Supreme Court ultimately found that the Second District's position was correct, holding "that the evidence tampered with must have some relevance to an ongoing or likely investigation to support a tampering charge." *Straley,* 2014-Ohio-2139, *supra*, at ¶ 16. *See also State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶ 21. The Ohio Supreme Court found that

> **The state's argument that all evidence recovered in an investigation should be included in the ambit of the tampering statute would require us to change the language from 'such' proceeding or investigation to 'any' proceeding or investigation.**

*Straley,* 2014-Ohio-2139, *supra*, at ¶ 16. In reaching this conclusion, the Ohio Supreme Court emphasized that the "sections of the Revised Code that define offenses or penalties 'shall be strictly construed against the state, and liberally construed in favor of the accused.'" *Id*. at ¶ 10. *Straley* cautions that "[t]here is no need to expand the reach of the statute beyond its plain meaning." *Id*. at ¶ 18.

**{¶64}** Considering Allen's supervision to have been an ongoing investigation for the sake of this analysis,[9] the special conditions of this supervision would be the logical subjects or parameters of this ongoing investigation. Thus, under *Straley*, the State needed to establish that Allen tampered with a record, document, or thing that was "related" to his supervision "with purpose to impair its value or availability as evidence * * *." *Straley, supra*, at ¶ 16, quoting R.C. 2921.12(A)(1).

**{¶65}** In this case, three of the seven "special conditions" of Allen's supervision are potentially applicable in this factual situation.[10] Ex. 3. There was a

---

[9] Resolution of this case does not require a determination as to whether the first element of the offense of tampering with evidence is satisfied by the fact that Allen was subject to supervision. Thus, I would make no determination as to whether Allen's supervision constituted an ongoing investigation in this case. *See* Stanley, *State v. Straley*, 41 OHNULR 935, 943 (2015) (noting that, in *Straley*, the Ohio Supreme Court operated under a narrower understanding of what constitutes an investigation than other jurisdictions that have similar definitions of the offense of tampering with evidence), citing *Tennessee v. Womack*, Tenn. Crim. App. No. W2012-01827-CCA-R3-CD, 2012 WL 3055773 (July 26, 2012); *Utah v. Gonzales*, 395 Utah 6, 2 P.3d 954 (Utah App. 2000); *Phillips v. Georgia*, 242 G.App. 404, 530 S.E.2d 1 (Ga. App. 2000). *See also Straley, supra,* at ¶ 17.

[10] In *Straley*, the police conducted a traffic stop because the defendant was driving erratically. *Straley, supra*, at ¶ 2. The police then observed that the defendant's speech was slurred and determined that she was driving without a license. *Id*. The police then obtained consent to search her vehicle for contraband but found none. *Id*. At this time, the defendant stated that she needed to urinate. *Id*. at ¶ 3. After she had completed using the restroom outside, a police officer looked over the area where she had urinated and found a baggie containing cocaine. *Id*. at ¶ 4. On review, the Ohio Supreme Court concluded that these facts did not support

prohibition against consuming or possessing alcoholic beverages ("Condition #1");

a requirement that he not commit any crimes that carry a potential penalty of jail

time ("Condition #4"); and a requirement that he not remove the SCRAM unit and

comply with the rules in the Ankle Monitor Agreement ("Condition #6"). Ex. 3.

Tr. 103, 106. Ex. 2, 3. A careful consideration of the facts of this case reveals that

the State did not present evidence establishing that, in cutting off the SCRAM unit,

Allen acted with the purpose to impair its value or availability as evidence "related"

to the conditions of his supervision. *Straley, supra*, at ¶ 19.

{¶66} Regarding the condition prohibiting consumption or possession of

alcoholic beverages, the State presented no testimony at trial that would suggest that

Allen, by cutting the strap of the physical ankle monitor, in any way affected the

data that had already been created. Thus, as noted previously, there is no evidence

that Allen tampered with any existing evidence that established whether he had

consumed or possessed alcohol on supervision by taking off the ankle monitor.

{¶67} The State could argue that Allen tampered with evidence by impairing

the ability of the ankle monitor to collect further data regarding whether Allen had

---

the first element of the offense of tampering with evidence because "[t]he baggie of cocaine did not relate to either an ongoing investigation of driving while under the influence of alcohol or driving without a license" and "had no evidentiary value to a likely investigation of public urination * * *." *Id*. at ¶ 19. Even though the police were involved in an ongoing investigation and had even searched her vehicle for contraband, the cocaine still did not have a close enough relation to the very specific objects of the ongoing investigation to meet the requirements of R.C. 2921.12(A)(1). Thus, in considering Allen's supervision to be an ongoing investigation for the sake of this analysis, I will use the conditions of his supervision as the specific objects of that ongoing investigation and will determine whether the evidence is related to those specific objects.

alcohol in his system. However, the third element does not require the State to only prove that Allen acted with the specific "purpose to impair * * * [the] value or availability" of the SCRAM unit. If that were the only requirement, this element could be established by the simple fact that Allen damaged the fastening strap of the ankle monitor. But R.C. 2921.12(A)(1) requires more. The State must prove that Allen acted with the specific "purpose to impair [the] value or availability" of the SCRAM unit "*as evidence * * *.*" (Emphasis added.) R.C. 2929.12(A)(1). Thus, an analysis under R.C. 2921.12(A)(1) requires an examination of the existing value or availability of the evidence that was allegedly tampered with.

{¶68} At trial, the State did not establish that the ankle monitor was functioning "as evidence" that Allen was ever violating Condition #1 at the time that he cut the strap on the SCRAM unit. R.C. 2929.12(A)(1). Thus, all indications are that, at the time that he took off the SCRAM unit, it was functioning as evidence of his compliance with Condition #1. At that moment, the existing evidentiary value of the SCRAM unit, if any, was in establishing his compliance. Thus, for Allen to have tampered with evidence related to Condition #1 by cutting off the SCRAM unit, he needed to have acted with the specific purpose of impairing the value of evidence that proved he was actually not in violation of the terms of his supervision. However, the State did not establish at trial that Allen cut off the ankle monitor

because he intended to impair its value as an item that tended to establish his compliance.[11]

{¶69} As to the third element, the State can, at best, argue that Allen may have acted with the intention of preventing evidence from possibly being created in the future. But this argument brings this analysis back to the previous analysis about the data that never existed. Again, an analysis under R.C. 2921.12(A)(1) requires an examination of the existing evidence and its value or availability at the time of the alleged criminal act. As noted previously, the data that was not generated after Allen cut off the ankle monitor was never created and therefore could not have been tampered with. Accordingly, the State did not present any evidence establishing that Allen tampered with any evidence that was related to Condition #1 of his supervision by cutting the fastening strap of the physical SCRAM unit.

{¶70} Next, Condition #6 prohibited Allen from taking off the ankle monitor. Ex. 3. At trial, Chief McKinney testified that he went to Allen's house after receiving a report of a domestic dispute at that location. Tr. 86, 88. Outside of the house, Allen's mother approached the police and reported that Allen was required to wear an ankle monitor as part of his supervision. Ex. 1. Tr. 135. She then stated that Allen had cut off the ankle monitor and thrown it at her head. Ex. 1. Tr. 98,

---

[11] I will further examine the idea of tampering with evidence that establishes a defendant's compliance with the applicable law in my analysis of Condition #4 and Condition #6 because the subject of those conditions are better explanatory vehicles.

134, 137. Sergeant Kaeck testified that, upon entering the residence, the police discovered the ankle monitor sitting on the arm of a recliner in the living room. Tr. 138, 141. Ex. 6. At trial, Allen admitted that he cut the strap of the ankle monitor and removed the SCRAM unit from around his ankle. Tr. 175. For four main reasons, these facts do not support a conviction for tampering with evidence that relates to Condition #6.

{¶71} First, by cutting off the SCRAM unit, Allen did not impair the evidentiary value of the ankle monitor. Rather, this act gave the ankle monitor evidentiary value as an item that tended to establish that he was in violation of Condition #6. The evidence that was related to Condition #6 was the physical ankle monitor *with* the severed fastening strap. If Allen had not cut off the SCRAM unit, there would have been no violation of this condition and no evidence of this violation. Further, once Allen had severed the fastening strap on the ankle monitor, there is no evidence in the record that Allen acted to "alter, destroy, conceal, or remove" the evidence of his violation of Condition #6. R.C. 2921.12(A)(1).

{¶72} Second, there is no evidence that Allen impaired the availability of the ankle monitor as evidence in this case. Upon entering the house, the police discovered the removed ankle monitor sitting in the open on a recliner in Allen's residence. Tr. 138, 141. The removed ankle monitor was found exactly where Allen's mother had told the police it was located when they arrived at the house.

Ex. 1. At trial, the State was able to introduce pictures of the removed ankle monitor sitting on the recliner and the physical ankle monitor with the severed fastening strap as an exhibit. Tr. 95. Ex. 5, 6, 8, 9.

{¶73} In these facts, there is no indication that, even after his mother had called the police and even after law enforcement had arrived at his residence, Allen took any steps to alter, destroy, conceal, or remove the removed ankle monitor that was the evidence of his violation of Condition #6. Rather, the removed ankle monitor was left sitting out in the open on a recliner in the living room. Thus, the evidence that Allen had violated Condition #6 was readily available when law enforcement entered his house and was then available at trial. Again, these facts do not suggest that, after Allen had cut off the SCRAM unit, he was acting with the specific purpose of impairing the value or availability of the ankle monitor in an ongoing or likely investigation.

{¶74} Third, in this case, the same act constitutes the conduct alleged to have been tampering with evidence and the conduct that violated Condition #6. In other words, cutting off the ankle monitor was not "a separate act" from removing the ankle monitor in violation of Condition #6. *Crocker, supra*, at ¶ 37. As a general matter, the evidence must be created and then tampered with. In other words, the act that gives an item evidentiary value must then be followed by an act of tampering that seeks to take away or impair that item's evidentiary value. For Allen's conduct

to constitute the crime of tampering with evidence, we would have to find that the act of removing the ankle monitor was simultaneously the act of tampering with the evidence of removing the ankle monitor.

**{¶75}** Fourth and most importantly, the State did not present evidence that establishes that Allen cut off the ankle monitor with the specific purpose of impairing its value or availability as evidence that relates to Condition #6. With regard to Condition #6, the intact ankle monitor could only serve "as evidence" of his compliance with the requirement that he wear the ankle monitor while under supervision. Thus, if the State intends for the intact ankle monitor to be considered as evidence of Allen's compliance with Condition #6, it must prove beyond a reasonable doubt that Allen cut off the ankle monitor "with *purpose* to impair its value or availability *as evidence*" as to his continued compliance with the conditions of his supervision. (Emphasis added.) R.C. 2921.12(A)(1).

**{¶76}** Though there may be conceivable exceptions, a person will not typically act with the specific intention of depriving an investigation of evidence that establishes his or her innocence. This is because the crime of tampering with evidence is generally motivated by a desire to prevent evidence of wrongdoing from being discovered. Under the facts of the case before this Court, why would Allen act with the specific purpose of impairing the value or availability of evidence that establishes his compliance with the terms of his supervision?

-40-

{¶77} Before Allen cut off the SCRAM unit, the physical ankle monitor was not evidence of any wrongdoing. The testimony at trial does not suggest that Allen saw this evidence of his compliance with Condition #6 and then sought to cut it off to impair its value or availability as evidence of his compliance. To find otherwise would be to hold that Allen cut off the ankle monitor just so that there would not be evidence that he was wearing his ankle monitor. This has the same import as finding that Allen cut off the ankle monitor just so there would be evidence that he was not in compliance with Condition #6. The testimony at trial does not suggest that Allen cut off the SCRAM unit with the specific intention of destroying evidence of his compliance with the conditions of his investigation.[12]

{¶78} At this point in the analysis, I turn to Condition #4 because it provides a better opportunity to explore the issues with establishing the purpose element of this crime when evidence of compliance is at issue. Condition #4 prohibited Allen from committing a criminal offense that could carry a jail or prison sentence. Ex. 3. In this case Allen was convicted of the offense of criminal damaging for cutting

---

[12] While the State did not present evidence that would establish that Allen acted with the requisite purpose, the Defense did present some evidence regarding Allen's intentions in cutting off the ankle monitor. Allen testified that the presence of the SCRAM unit around his ankle was interfering with his sleep and that he went to the court on the morning of the incident to have the ankle monitor adjusted. Tr. 173-174. When he discovered the necessary personnel were not in the office, Allen took no further steps to resolve this issue through the court and returned home. Tr. 186-187. His testimony indicates that, after he returned home, he cut off the ankle monitor to address his discomfort around the time that he was having a disagreement with his mother. Tr. 176. In considering his statements, I would note that his own testimony undercuts the notion that his discomfort extended into what could be considered a medical emergency but also that the Defense did provide some evidence that sheds light on Allen's intent. Tr. 175-176, 182, 184.

off the ankle monitor. Doc. 106. This offense carried a potential jail sentence. R.C. 2909.06(B); R.C. 2929.24(A)(2).

{¶79} But in this case, the act of cutting off the ankle monitor would have been the basis of both the charge of criminal damaging (the potential violation of Condition #4) and the potential violation of Condition #6. Since these potential violations are constituted by the same act and the same evidence, the prior analysis of Condition #6 largely obtains here in this analysis of Condition #4. However, Condition #4 broadly prohibits the commission of criminal offenses.

{¶80} If we are to treat Allen's supervision as an ongoing investigation for the sake of argument, Condition #4 dramatically expands the scope of the records, documents, or things that are related to this ongoing investigation. For Allen, every unbroken window in his mother's house was potentially evidence that Allen was complying with Condition #4 by not committing the offense of criminal damaging. If Allen had thrown an object in anger through a window, this would have constituted the felony offense of tampering with evidence *but for* the element of purpose that is included in R.C. 2921.12(A)(1). Thus, to obtain a conviction for tampering with evidence for breaking his mother's window, the State would have to prove not just that Allen broke the window but also that Allen had acted with the purpose of impairing the value or availability of the unbroken window as evidence that related to Condition #4. The State would have to prove that he broke the

window *because* he wanted to impair its value or availability as evidence of his compliance with the conditions of his supervision.

**{¶81}** The dangers of not strictly construing this element of purpose with regard to evidence of compliance abound. If a defendant is confined to his home as part of his supervision, does he tamper with evidence by deleting a selfie that establishes that he was at home in compliance with his confinement? If a defendant deletes a telematic record that establishes he was driving the speed limit, is he tampering with evidence because he deleted a record that he was not violating any laws on his supervision? The intent component of the crime of tampering with evidence is a critical limitation that guards against overbroad applications of R.C. 2921.12(A)(1).[13]

**{¶82}** Returning to the SCRAM unit, the only real existing value of the intact ankle monitor as evidence in this case was in establishing Allen's compliance with the conditions of his supervision. To establish that Allen tampered with evidence by taking off the ankle monitor, the State needed to establish that he cut the ankle monitor off because he wanted to impair its value as evidence that, at that time, only established his compliance with the conditions of his supervision.

---

[13] I do not believe that the State must prove that evidence is of an inculpatory nature to establish the crime of tampering with evidence in all cases. But under the facts of the case presently before this Court, we know the nature of the physical ankle monitor, and that knowledge must shape our understanding of Allen's purpose in cutting off the ankle monitor.

{¶83} On appeal, the State has not identified any other evidence of a violation of the conditions of his supervision or of the crime of criminal damaging that Allen could have arguably tampered with. Again, after Allen had completed the act of cutting off the ankle monitor, there is no indication in the record of this case that he took any additional action to tamper with any evidence that was related to an investigation into whether he was in violation of the conditions of his supervision or into an investigation into the crime of criminal damaging. In the absence of such evidence, the State has not produced sufficient evidence to support a conviction for tampering with evidence in this case. If the act of cutting off the ankle monitor in these circumstances should receive a greater punishment than one offered by the charge of criminal damaging, that is a matter for the General Assembly to consider.

{¶84} In conclusion, I return to my original question: with what existing evidence did Allen tamper? A close examination of the facts of this case demonstrates that the State did not provide sufficient evidence to establish that Allen's actions with respect to the ankle monitor constituted the offense of tampering with evidence. In this case, the evidence regarding the data from the ankle monitor does not substantiate the second or third elements of this offense. The evidence regarding the physical ankle monitor itself does not substantiate the third element.

**{¶85}** Accordingly, I would reverse Allen's conviction for tampering with evidence, which would render his arguments about merger in his first assignment of error moot. I am aware that, in *State v. Shepherd*, this Court considered a similar set of facts and, at points, came to conclusions that run counter to those contained in this dissent. *Shepherd*, *supra*, at ¶ 19-22. However, I would again depart from the reasoning set forth in *Shepherd* inasmuch as it relates to the crime of tampering with evidence. *Id*. For the aforementioned reasons, I concur with the majority's conclusion that Allen's conviction for criminal damaging is supported by sufficient evidence and should be affirmed. However, I respectfully dissent from the majority's conclusion that Allen's conviction for tampering with evidence is supported by sufficient evidence and is not, therefore, against the manifest weight of the evidence.

**/jlr**